**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
**NAJJA PLOWDEN,**

                    Plaintiff,

     -against-

**THE CITY OF NEW YORK, POLICE OFFICER**
**NICHOLAS LOWETH (Shield 4250, 77th Precinct),**
**and NYC POLICE OFFICERS, SUPERVISORS**
**AND EMPLOYEES JOHN and JANE DOES 1-5,**

                    Defendants.
------------------------------------------------------------------------X

**17 CV 191**

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff **NAJJA PLOWDEN**, by his attorney, Joel Berger, Esq., for his complaint alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

        1.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution, by employees of the New York City Police Department (NYPD). Plaintiff also alleges pendent state law negligence claims.

### JURISDICTION AND VENUE

        2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

        3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

        4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### PENDENT JURISDICTION

        5.     This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On September 13, 2016, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

### JURY DEMAND

9. Plaintiff demands trial by jury in this action.

### PARTIES

10. Plaintiff **NAJJA PLOWDEN,** age 35, is an African-American male, a citizen of the United States and a resident of the State of New York and Kings County. He has no criminal record of any kind. He has both bachelors and masters degrees. He is employed by a the Round Star Foundation, an agency that sends him to NYC Department of Education schools as an occupational therapist for special education students, and by the Packer Collegiate School as coach of the woman's soccer team. Mr. Plowden is an honorably-discharged United States Army veteran who served in Afghanistan and Korea.

11. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

12. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, supervisory police officers and other NYPD employees, including the

individually named defendant herein.

13.     Defendant City of New York is also responsible for the appointment, training, supervision, promotion and discipline of all other NYC employees.

13.     At all times relevant herein, defendant Nicholas Loweth, Shield 4250, was a police officer employed by the NYPD, assigned to the 77th Precinct in Brooklyn, NY.

14.     At all times relevant herein, defendants John and Jane Does 1-5 were NYC police officers, supervisory police officers and/or other employees.  Plaintiff does not at this time know the names of John and Jane Does 1-5.

15.     At all times relevant herein, defendants Loweth and John and Jane Does 1-5 were acting as agents, servants and employees of defendant City of New York.

16.     At all times relevant herein, all defendants were all acting under color of state law.

## *FACTS*

17.     On Wednesday, August 17, 2016, at approximately 12:30 A.M.., plaintiff was peacefully walking his dog in Brower Park, a small park only one block square, approximately three blocks from his home in the Crown Heights neighborhood of Brooklyn.

18.     Many residents of the neighborhood routinely walk their dogs in Brower Park at night.

19.     There are several large signs in the park stating that dogs cannot be walked off the leash between 9:00 A.M. and 9:00 P.M., and admonishing dog-walkers to pick up after their dogs. None of these signs say anything about the park being closed at any particular time.

20.     On August 17, 2016, plaintiff entered the park with his dog at the southwest corner of the park.

21.     At the southwest corner of the park there are two large signs, one stating that dogs

cannot be walked off the leash between 9:00 A.M. and 9:00 P.M., the other prohibiting barbecuing and fires.

22. At the southwest corner there is no sign clearly stating that the park is closed at any particular time.

23. Five of the six entrances to Brower Park have no signage stating that the park closes at any particular time.

24. At one entrance (the northwest) there is the standard "New York City Parks" sign with numerous park rules (no littering, no smoking, no illegal drugs or alcohol, etc.), the last of which states in small print that the park closes at dusk.

25. Brower Park is frequented by numerous residents of the neighborhood after dusk.

26. Assuming *arguendo* that the official position of the NYC Parks Department or the NYPD is that Brower Park is closed to the public after dusk, no such position has ever been clearly communicated to the residents of the neighborhood, and there has never been any prior effort by the NYC Parks Department or the NYPD to enforce any such rule.

27. On Wednesday, August 17, 2016, at approximately 12:30 A.M., as plaintiff was peacefully walking his dog in Brower Park, plaintiff was approached by two NYPD officers in a patrol car.

28. The driver, Caucasian Police Officer Nicholas Loweth (shield 4250, 77th Precinct), told plaintiff that it was illegal for him to be in Brower Park after dark and demanded to see his identification.

29. There was a Caucasian individual nearby in the park, playing fetch with a dog, but PO Loweth ignored that individual.

30. When Mr. Plowden explained that he hadn't taken ID with him since he was just walking his dog, PO Loweth announced that since it was illegal for him to be in the park after dark, and since he did not have ID, he was under arrest.

31. Plaintiff explained that he lived very close by and had ID at home, which his wife -- then approximately 36 weeks pregnant -- could show to the officer, but that request was ignored.

32. Plaintiff was detained for at least 10 minutes if not more while PO Loweth ran his name through a data system.

33. PO Loweth then announced that plaintiff had a 2013 warrant for failing to appear in court on a ticket for illegal skateboarding.

34. Plaintiff was handcuffed and taken to the 77th Precinct, 127 Utica Avenue. (He was allowed to have his wife pick up the dog on the way to the precinct.)

35. Plaintiff explained to PO Loweth that the warrant had been dismissed by a Manhattan Criminal Court Judge at 100 Centre Street way back on May 18, 2016.

36. During approximately seven hours of incarceration in a cell at the 77th Precinct, plaintiff repeatedly asked PO Loweth to check for proof that the warrant had been dismissed.

37. The officer did not do so, and instead had plaintiff photographed, fingerprinted and taken to Brooklyn Central Booking.

38. PO Loweth candidly stated to plaintiff that he had been stopped and detained in Brower Park solely as a matter of racial profiling.

39. PO Loweth proclaimed that Mr. Plowden had been singled out because his "culture" is "more problematic," "more violent," "more prone to crime," and that he wouldn't have been stopped and detained had he been a Caucasian individual in a park at night on the Upper East Side of

Manhattan.

40. PO Loweth also harangued plaintiff with comments that Donald Trump was the best option for America because Trump would support the police and support their policing in minority neighborhoods, and would end the "abuse of resources" such as food stamps and welfare by "ghetto" residents.

41. PO Loweth was on cell duty at the 77th Precinct for most of plaintiff's imprisonment there, and lectured Mr. Plowden with this sort of racist dialogue repeatedly over the course of plaintiff's confinement.

42. Najja Plowden, a highly-educated, articulate, middle class citizen with no criminal record of any kind, was extremely upset and broke down crying in the detention cell.

43. PO Loweth sadistically responded to Mr. Plowden's crying by laughing at him.

44. At approximately 7:30 A.M. Mr. Plowden was again handcuffed and taken by prison bus to Brooklyn Central Booking, arriving at approximately 9:00 A.M. after several stops to pick up additional arrestees.

45. Plaintiff did not see a judge until approximately 5:00 – 5:30 P.M. that evening.

46. The transcript of the proceeding that evening (docket no. 2016KN048439) reveals that unlike PO Loweth, the Brooklyn Criminal Court Judge (Hon. Marguerite Daugherty, Part AR-2) acknowledged that the warrant had already been dismissed in Manhattan Criminal Court

47. Judge Daugherty apologized that the Manhattan dismissal should have been in the NYPD computer system, noting that "it happens because the police computers, they all don't get hooked up properly."

48. Judge Daugherty vacated the warrant and entered an Adjournment in Contemplation

6

of Dismissal on both the 2013 skateboarding charge and PO Loweth's charge of being in the park after dark.

49. Plaintiff's pregnant wife, Karen Plowden, met him in the courtroom and accompanied him home.

50. Plaintiff was not even the individual for whom the warrant had been issued.

51. A summons (#4411129961) had been issued on August 29, 2013, for skateboarding in Union Square Park in Manhattan, and the individual to whom the summons was issued had presented plaintiff's ID -- which had been stolen in the Union Square Park area long before.

52. Plaintiff was actually in South Africa on August 29, 2013.

53. When no one appeared on the return date of the summons in November 2013 a bench warrant had been issued (docket no. 2013SN090393).

54. During another racial-profiling check of plaintiff's ID on May 18, 2016, the warrant had come up in the NYPD computer system and plaintiff had been arrested and taken to Manhattan Criminal Court at 100 Centre Street.

55. At approximately 2:30 A.M. on May 19, 2016, plaintiff had appeared before the Court (Hon. Louis Nock, Part AR-3, docket no. 2016SN024233).

56. The transcript of the proceeding before Judge Nock establishes that the Court had vacated the warrant and dismissed the skateboarding charge outright -- three months before Mr. Plowden was arrested in Brower Park

57. Had PO Loweth not engaged in blatant racial profiling, Mr. Plowden would never have been approached in Brower Park to begin with and would not have been detained for a warrant check.

58. Had PO Loweth paid any attention to Mr. Plowden's valid explanation that he did not have an active warrant, and had allowed his wife to present his ID, he would have been released from the 77th Precinct with a summons for being in the park after dusk and would not have been taken to Brooklyn Central Booking.

59. PO Loweth was a defendant before this Court in 2014, accused of participating in the beating of a NYC resident and the fabrication of false charges against him (subsequently dismissed) in *Cedeno v. O'Mahoney, et al.*, 13 CV 4754 (CBA) (VVP). The City paid $25,000 to settle the case.

60. Even if a NYPD computer reflected a notation stating that there was still an active warrant, there would not have been any such notation but for the negligence of other NYC police officers, supervisory police officers and/or other employees.

61. Plaintiff was imprisoned for approximately 17 hours primarily due to the misconduct of the arresting officer in concededly racially profiling him and then not investigating whether or not there truly was a warrant.

62. Plaintiff was severely traumatized by the incident, and has suffered substantial harm for which he is entitled to monetary damages. Additionally, as a result of this matter a NYC Department of Education database has declared him ineligible for assignments to schools.

### *FIRST CLAIM FOR RELIEF*

63. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-62.

64. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

65. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-62 and 64.

66. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers.

67. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

68. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-55, 57 and 59-60 violated plaintiff's rights guaranteed by 42 USC § 1983, 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *THIRD CLAIM FOR RELIEF*

69. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-62, 64, and 66-68.

70. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, and employee negligence.

71. The conduct toward plaintiff alleged herein subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering, and loss of income.

### *FOURTH CLAIM FOR RELIEF*

72. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-62, 64, 66-68, and 70-71.

73. At all times relevant herein, the individual defendants were on duty and were acting

within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 12, 2017

<u>/s/ Joel Berger</u>
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFF**